IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GODDESS APPROVED PRODUCTIONS, LLC,

    *Plaintiff,*

    v.

WOLOX and SIRVART, SA,

    *Defendants.*

No. 20-cv-1697-SB

---

David W. deBruin, NAPOLI SHKOLNIK, LLC, Wilmington, Delaware.

    *Counsel for Plaintiff.*

Jeremy D. Anderson, FISH & RICHARDSON P.C., Wilmington, Delaware.

    *Counsel for Defendants.*

---

### MEMORANDUM OPINION

September 28, 2022

BIBAS, *Circuit Judge*, sitting by designation.

    Starting a business is tough. Starting a technology company from scratch can be even tougher. As Goddess Approved Productions learned, sometimes everything goes wrong.

Although Goddess is understandably disappointed by its dealings with Wolox and Sirvart, it cannot so easily turn its disappointment into legal claims. Thus, I dismiss most of its claims, but not all.

## I. BACKGROUND

Goddess is a startup technology company. It wanted to develop an app letting consumers use their phones to identify groceries' nutritional information. Compl., D.I. 1 ¶¶ 10, 12. It hired Wolox, an Argentinian software company, to help develop the app. *Id.* ¶¶ 3, 11, 15. On March 26, 2018, the parties formed a Master Services Agreement. *Id.* ¶ 15.

That Agreement specified that "[a]ll work to be performed by" Wolox would be covered by a corresponding "Statement of Work." Each Statement of Work, in turn, would determine a given project's specifications and deliverables. Master Services Agreement, D.I. 1-1 ¶ 1.1. The Agreement made clear that if it ever conflicted with a Statement of Work, the Statement of Work would control. *Id.* ¶ 11. The Agreement also included standard integration and no-oral-modification clauses. *Id.*

The first Statement of Work covered "the Prototype stage, the Product Design stage and the first three months of development for the MVP version of the Application." Statement of Work No. 1, D.I. 1-1 ¶ 2.

Under the Statement, Wolox agreed to "develop a 'proof-of-concept' prototype algorithm." That prototype algorithm was supposed to "function with 8-10 popular products" and "be able to take a video stream and generate an output video displaying a frame marking the position of the detected grocery store products with their corresponding name." *Id.* ¶ 4.3.

2

This protype would "not run on a mobile phone and [would] not run in real time." *Id.* Instead, it would "merely serve to show that the algorithm works on real-time *data* running on a [computer] device." *Id.* (emphasis added). So, in theory, the prototype algorithm would receive a video of unmarked groceries and, "after a few seconds," show a new video with marked products. *Id.*

Development did not go well. Wolox never developed a functioning ten-product prototype. Compl., D.I. 1 ¶¶ 19, 27. But its executives continued to convey "hope" that they could deliver a 500-product version. *Id.* ¶ 27; *see also id.* ¶¶ 19, 21, 24–25, 28, 33. Wolox's versions of the app remain riddled with errors. *Id.* ¶¶ 37–60.

So Goddess sues Wolox on a range of theories. It also sues Sirvart, a Uruguayan company to which it gave an $80,000 promissory note in exchange for Wolox's discounted rates. *Id.* ¶ 17; Convertible Promissory Note, D.I. 1-2. Wolox and Sirvart have since moved to dismiss Goddess's claims. D.I. 9.

To survive, Goddess's Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And as the contract specifies, I apply Delaware substantive law. Master Services Agreement, D.I 1-1 ¶ 11; 6 *Del. C.* § 2708.

## II. GODDESS'S CORE BREACH-OF-CONTRACT CLAIMS AGAINST WOLOX SURVIVE

To adequately plead breach of contract, Goddess must show (1) the existence of a contract, (2) "the breach of an obligation imposed by that contract," and (3) resulting damage to it. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

I must read the contract as a whole and enforce its plain meaning. *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021).

Goddess plausibly alleges that Wolox breached its obligations to create functioning prototypes of the app. But it does not plausibly allege that Wolox was obligated to create a fully scalable app.

### A. Wolox allegedly breached its duty to create a ten-product version of the app

The first Statement of Work required Wolox to develop a "proof-of-concept prototype algorithm" that would "function with 8-10 popular products." Statement of Work No. 1, D.I. 1-1 ¶ 4.3 (internal quotation marks omitted). Goddess alleges that Wolox failed to develop this prototype. Compl., D.I. 1 ¶¶ 19, 27.

Wolox disagrees. It says that the parties' second amendment to the Statement of Work proves that it delivered a functioning prototype. D.I. 10 at 6–7. And it points to a provision that required Goddess to object within thirty days if Wolox "perform[ed]" or "deliver[ed]" a deficient service or product. Master Services Agreement, D.I. 1-1 ¶ 1.4; D.I. 10 at 6–7. But the second amendment simply calls for more hours of Wolox's work. Second Am. to the First Statement of Work, D.I. 1-1 at 22. So without proof of delivery, Wolox cannot specify when Goddess should have objected. On the facts alleged, the object-or-waive provision of the Agreement does not apply. Goddess plausibly alleges that Wolox failed to develop a functioning ten-product prototype algorithm.

### B. Wolox also allegedly breached its duty to develop a functioning 500-product version

The next question is whether Wolox was contractually obligated to develop a 500-product version of the app. True, the first Statement of Work expressly referred only to the ten-product prototype. Statement of Work No. 1, D.I. 1-1 ¶ 4.3. But Goddess alleges that Wolox executives made several representations showing the company's intent to provide Goddess with a "500 products version." Compl., D.I. 1 ¶¶ 27–30; *see also id.* ¶ 19.

Wolox hangs its hat on the Agreement's no-oral-modification clause: "No changes or modifications or waivers to this Agreement will be effective unless in writing and signed by both Parties." Master Services Agreement, D.I. 1-1 ¶ 11. Because Wolox's representations about a 500-product version were not in signed writings, it says, it did not need to produce that version. D.I. 10 at 10–11.

But there is a way around that clause. The "existence of [a joint integration and no-oral modification clause] does not prohibit the modification of making of a *new* agreement by conduct of the parties, despite a prohibition [] against any change except by written bilateral agreement." *In re Coinmint, LLC*, 261 A.3d 867, 899–900 (Del. Ch. 2021) (alterations in original) (emphasis added) (quoting *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33–34 (Del. 1972)).

Goddess plausibly alleges that Wolox had to develop a 500-product app. The First Statement of Work contemplated "changes in scope" that would be accepted via email and reflected in "an amendment to this Statement of Work." Statement of Work No. 1, D.I. 1-1 ¶ 4.4. In August 2018, a Wolox executive stated by email that "[f]or the MVP

5

App, we will include 500 products." Compl., D.I. 1 ¶ 19. A month later, the parties amended the Statement of Work, and Wolox said it would "start with the development of the MVP." First Am. to the First Statement of Work, D.I. 1-1 at 3.

So Goddess's breach-of-contract claim based on Wolox's failure to develop a 500-product app also survives. *Pepsi-Cola*, 297 A.2d at 33; *cf. CPC Mikawaya Holdings, LLC v. MyMo Intermediate, Inc.*, 2022 WL 2348080, at *12–14 (Del. Ch. June 29, 2022) (explaining that waiver of a no-oral-modification clause typically survives a motion to dismiss, even if ultimately difficult to prove, because it is a fact-intensive inquiry); *Good v. Moyer*, 2012 WL 4857367, at *5–6 (Del. Super. Ct. Oct. 10, 2012).

### C. But Wolox did not promise to create a fully scalable app

Goddess also asserts that Wolox "agreed to develop a scalable mobile application version of the App which would ultimately be able to recognize hundreds of thousands of products to be commercially viable." D.I. 1 ¶ 70. But the contract never says this. The first Statement of Work covered just "the first three months of development for the MVP version of the application." Statement of Work No. 1, D.I. 1-1 ¶ 2; *see also* D.I. 15 at 8 & n.1. Indeed, Goddess's own Complaint belies its grand assertion. Because "Wolox had completely failed to develop a functioning 500-product [MVP]," Goddess never agreed "to begin the next development phase." Compl., D.I. 1 ¶¶ 22–23. Wolox thus did not breach any obligation to develop a fully scalable app.

### III. MOST OF GODDESS'S OTHER BREACH-OF-CONTRACT CLAIMS FAIL

Goddess also alleges breaches of less central obligations. It claims that Wolox breached the contract by (1) "developing an App with outdated code," (2) "billing [Goddess] for work that was never performed," (3) "failing to return deliverables [and]

6

documents," (4) "refusing" to demonstrate the app, and (5) "failing to follow the SCRUM methodology in developing the App." Compl., D.I. 1 ¶¶ 72–74, 76–77. All but the last claim fail.

### A. The outdated-code claim fails

Goddess complains that Wolox used "Python 2," which was slated for obsolescence by 2020. Compl., D.I. 1 ¶¶ 61–63. But the contract stated only that the app's code would support iPhones and Androids; it did not specify the use of any particular coding language. Statement of Work No. 1, D.I. 1-1 ¶ 4.3(a)–(b). So this claim fails.

### B. The billing claim fails

Goddess baldly asserts that Wolox "fraudulently billed [Goddess] for hours of work that w[ere] never performed." Compl., D.I. 1 ¶ 67. Without more, Goddess fails to state a plausible claim.

### C. The documents-and-deliverables claim fails

Goddess also claims that Wolox failed or refused to provide it with many documents and deliverables. Compl., D.I. 1 ¶¶ 64–66. These documents and deliverables included things like "Testing Documents," "Product Information List Export[s]," and "intellectual property/code." *Id.* The Agreement indeed provides for the return of "all Confidential Information," but only upon (1) the "termination or expiration" of the Agreement or Statement of Work, or (2) a party's request. Master Services Agreement, D.I. 1-1 ¶ 3.3.

Goddess fails to plead that the Agreement or first Statement of Work ever terminated or expired. *See id.* ¶ 3.2. Nor does it plead sufficient facts showing that it requested this information. *See id.* ¶ 3.3. So its claim cannot proceed as alleged.

7

### D. The demonstration claim fails

Goddess next alleges that Wolox refused to demonstrate the app's "backend" or how it worked "as a whole." Compl., D.I. 1 ¶ 68. But the parties' contract provided only for "functionality demos" at the end of every two-week "sprint" period. Statement of Work No. 1, D.I. 1-1 ¶ 3.1. Goddess thus fails to plausibly allege a breach on this ground.

### E. But the SCRUM-methodology claim survives

Goddess asserts that by trying "to implement the entire processing pipeline at once from the PC version to" the Apple version, Wolox deviated from the agreed-upon SCRUM method. Compl., D.I. 1 ¶ 29. That method called for Wolox "to deliver working functionalities within a short timespan"—here, two weeks. Statement of Work No. 1, D.I. 1-1 ¶ 3.1. Goddess plausibly alleges that in implementing the pipeline wholesale rather than piecemeal, Wolox breached its duty. So this claim survives.

## IV. GODDESS'S GOOD-FAITH-AND-FAIR-DEALING CLAIM FAILS

The implied covenant of good faith and fair dealing bars a contractual party from engaging in "arbitrary or unreasonable conduct" against its counterparty. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 440–42 (Del. 2005) (internal quotation marks omitted). It is a "rare" remedy. *Id.* at 442. Put simply, litigants cannot repackage breach-of-contract claims as breach-of-the-implied-covenant claims. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

Goddess alleges that Wolox engaged in various misdeeds that breached the implied covenant. Compl., D.I. 1 ¶¶ 119–24; D.I. 15, at 19. But Goddess's allegations merely echo those made in its breach-of-contract claims. *See* Compl., D.I. 1 ¶¶ 71–75.

So the express terms of the agreements control, and the implied covenant is inapplicable. *See Kuroda*, 971 A.2d at 888.

Thus, I dismiss Goddess's implied-covenant claim without prejudice.

### V. GODDESS'S UNJUST-ENRICHMENT CLAIM FAILS

To plead unjust enrichment, Goddess must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

Goddess insists that Wolox was "unjustly enriched at [Goddess's] expense by lying to [Goddess] and causing [Goddess] to pay for [Wolox's] completely defective and faulty work, and for work [Wolox] never performed." Compl., D.I. 1 ¶ 80.

As discussed, Goddess fails to allege facts plausibly showing that Wolox lied and billed for work that it never did. Plus, Goddess cannot claim unjust enrichment where, as here, "the contract is the measure of plaintiff['s] right[s]." *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979); *accord Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315–16 (D. Del. 2008).

So I dismiss its unjust enrichment claim without prejudice.

### VI. GODDESS'S TORT CLAIMS FAIL

Goddess sues Wolox for several different torts. For largely similar reasons, all fail.

### A. Goddess does not plead fraudulent inducement or wanton and willful misconduct

For its fraudulent-inducement claim to survive, Goddess must plead:

- Wolox's false representation, "usually one of fact,"

9

- Wolox's "knowledge or belief" in the representation's falsity,
- Wolox's "intent to induce" Goddess to form a contract,
- Goddess's actions taken "in justifiable reliance" upon Wolox's false representations, and
- Goddess's damage resulting from its reliance.

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

Goddess alleges that Wolox "knowingly and fraudulently induced" Goddess into the contract "by representing that [Wolox] would apply the skill, proficiency, technology and support to develop the App." Compl., D.I. 1 ¶ 84; *see also id.* ¶ 13. These are conclusory statements, not allegations of fact. They also fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement for fraud. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216–17 (3d Cir. 2002).

Goddess also alleges that Wolox "knowingly and fraudulently induced" Goddess into "paying for services by representing … that the App was close to completion and was able to recognize 500 products." Compl., D.I. 1 ¶ 85; *see also id.* ¶¶ 19, 21, 24, 27–28, 33. While these allegations are more particular, they fail under Delaware substantive law. Goddess cannot claim fraud by alleging merely that Wolox never intended to fulfill its obligations. *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *12–15 (Del. Ch. Dec. 22, 2010); *Grunstein v. Silva*, 2009 WL 4698541, at *12–14 (Del. Ch. Dec. 8, 2009).

I thus dismiss Goddess's fraudulent-inducement claims without prejudice.

Goddess's wanton-and-willful-misconduct claims are the same as its fraudulent-

inducement claims. *Compare* Compl., D.I. 1 ¶¶ 130(a)–(h), *with id.* ¶¶ 84–91. "Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself." *Data Mgmt. Internationalé, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007). So for the same reasons as the fraudulent-inducement claims, I dismiss these claims too.

### B. Nor does Goddess plead negligent misrepresentation or gross negligence

To plausibly plead negligent misrepresentation, Goddess must show "all of the elements of … fraud[ulent inducement] except that [it] need not demonstrate that the misstatement or omission was made knowingly or recklessly." *Williams v. White Oak Builders, Inc.*, 2006 WL 1668348, at *7 (Del. Ch. June 6, 2006) (internal quotation marks omitted).

But Goddess runs into a similar roadblock as it did with its fraudulent-inducement claims: "[W]here the action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of some duty imposed by law, an action [in tort] will not lie." *Garber v. Whittaker*, 174 A. 34, 36 (Del. Super. Ct. 1934).

Indeed, Wolox's allegedly negligent misrepresentations "all relate to [Wolox]'s contractual duty to deliver software free from defects." *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 645–46 (D. Del. 2017). Goddess's Complaint confirms as much. *Compare* Compl., D.I. 1 ¶¶ 71–75, *with id.* ¶¶ 95–102. So Goddess's negligent-misrepresentation claims fail.

11

For Goddess's gross-negligence claims, the same analysis compels the same conclusion. Goddess fails to show that Wolox owed it a duty "imposed by law" rather than one imposed by contract. *Garber*, 174 A. at 36. Goddess parrots the same allegations as in its negligent-misrepresentation claim, simply replacing "negligently" with "grossly negligent." *Compare* Compl., D.I. 1 ¶¶ 95–102, *with id.* ¶¶ 106–13. Its attempt to transform a breach-of-contract claim into a gross-negligence claim thus fails too.

**C. No professional-negligence claim against software developers exists**

Goddess invites me to craft a new cause of action under Delaware law: professional negligence against software developers. D.I. 15 at 16. Like the other courts that have considered this question, I decline to do so. *See Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 911–14 (D. Minn. 2015).

So I dismiss Goddess's professional-negligence claim with prejudice.

## VII. Goddess's Claims Against Sirvart All Fail

Goddess also sues Sirvart, but its real gripe is with Wolox. True, the Note between Goddess and Sirvart references as consideration the "delivery of software developed by [the] Holder" and defines Sirvart as the "Holder." Convertible Promissory Note, D.I. 1-2 at 2. Yet the Master Services Agreement, the first Statement of Work, and that Statement's two amendments all say they were "entered into … by and between Goddess … and Wolox." D.I. 1-1 at 2, 5, 13, 22. The Complaint mentions Sirvart's specific conduct only twice: in describing the Note's execution, and in alleging that "Sirvart and Wolox are associated corporations." Compl., D.I. 1 ¶¶ 17, 135.

Sensing these deficiencies, Goddess argues in its Opposition Brief that Wolox and Sirvart "acted as one [and] the same party regarding the agreement with [Goddess]."

12

D.I. 15 at 4. And it asserts that the companies share executives. *Id.* at 4–5. But Goddess cannot raise new facts in a response brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

The relevant conduct described in the Complaint is almost entirely Wolox's. Compl., D.I. 1 ¶¶ 10–68. Goddess thus fails to plead a plausible link between Sirvart and the alleged misconduct. *Cf. Rhett v. Salas*, 2019 WL 2337445, at *4 (D.N.J. June 3, 2019); *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, 2019 WL 1789781, at *2–3 (D. Del. Apr. 24, 2019) (describing a successful alter-egos pleading).

So I dismiss the claims against Sirvart without prejudice.

Plus, Goddess wants me to declare the Note between it and Sirvart void. D.I. 1 ¶ 141. It says that "Defendants' grossly negligent, fraudulent misrepresentations, and willful and wanton misconduct" induced it to execute the Note. Compl., D.I. 1 ¶ 134.

But Goddess is not entitled to declaratory relief absent viable underlying claims. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011). And though some breach-of-contract claims survive against Wolox, none survives against Sirvart, the holder of the Note. So I do not grant Goddess declaratory relief.

* * * * *

Goddess hired Wolox to develop early versions of its app. Development was disastrous. So Goddess's lawsuit can proceed on the claims that Wolox failed to produce a ten- or 500-product version of the app and that it deviated from the SCRUM method.

But Goddess's other claims fail. I dismiss its professional-negligence claim with prejudice. The rest I dismiss without prejudice.